**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **8:07CR287** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND** |
| | ) | |
| **KHA MANH NGUYEN,** | ) | **RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the motion to suppress filed by defendant Kha Manh Nguyen (Nguyen) (Filing No. 17). Nguyen is charged in Count I of the Superceding Indictment with a conspiracy to travel in interstate commerce to distribute the proceeds of an unlawful activity and to carry on or promote an unlawful activity in violation of 18 U.S.C. §§ 1952(a)(1) and (a)(3), all in violation of 18 U.S.C. § 371. Nguyen is also charged in Count II with traveling in interstate commerce to distribute the proceeds of an unlawful activity and to promote and carry on an unlawful activity in violation of 18 U.S.C. § 1952(a)(1)(A) or (a)(3)(A). Nyugen is further charged in Count III with the forfeiture of $597,955.00 in U.S. currency in accordance with 28 U.S.C. § 2461(c). The Superceding Indictment was filed on December 10, 2007 (Filing No. 34). Following the filing of the original Indictment (Filing No. 9), Nguyen sought to suppress evidence seized by officers of the Douglas County Sheriff's Office (DCSO) on July 23, 2007, after a traffic stop on Interstate 80 (I-80) near the I Street exit in Omaha, Nebraska (Filing No. 17).

The court held an evidentiary hearing on the motion on October 25, 2007. Nguyen was present with his counsel, Federal Public Defender David R. Stickman. The United States was represented by Assistant U.S. Attorney Nancy A. Svoboda. The court heard the testimony of DCSO Sergeant Edward Joseph Van Buren (Sergeant Van Buren) and DCSO Deputy Jason Bargstadt (Deputy Bargstadt). The court also received into evidence: a DVD of the traffic stop (Exhibit 1); a photo of the trunk contents (Exhibit 2); photos of the contents of a shopping bag (Exhibits 3 and 4); a photo of an open box (Exhibit 5A); and a photo of a box of currency (Exhibit 5B). A transcript (TR.) of the hearing was prepared and filed on November 2, 2007 (Filing No. 32). On November 7, 2007, following the hearing,

the parties submitted a DVD of the traffic stop with time annotations (Exhibit 1A). Neither party requested a supplemental evidentiary hearing.

## FINDINGS OF FACT

Sergeant Van Buren has been with the DCSO for 22 years (TR. 3).  He has been assigned to the DCSO K-9 Unit for 12 years becoming the K-9 Unit Sergeant in 2001 (TR. 4).  Part of Sergeant Van Buren's duties involve road patrol duties including criminal interdiction on I-80 in Douglas County, Nebraska (TR. 4).  Sergeant Van Buren is a canine handler, supervises the K-9 unit, and conducts canine training for the officers and canines in the K-9 unit (TR. 4).  Sergeant Van Buren testified criminal interdiction involves the recognition of various indicators that there is ongoing criminal activity when a vehicle is stopped for a traffic violation (TR. 4-5).  Sergeant Van Buren has attended periodic criminal interdiction training since 1997 at training seminars around the country (TR. 5).

On July 23, 2007, Sergeant Van Buren was on road patrol with Deputy Bargstadt, in Deputy Bargstadt's marked DCSO patrol vehicle on Interstate 80 in Douglas County, Nebraska (TR. 7-9).  Both officers were in uniform and were accompanied by Deputy Bargstadt's canine, Voss (TR. 9-10).  Around 1:30 p.m., the officers were stationary on I-80 westbound on the inside shoulder near 108th Street in Omaha, Nebraska (TR. 9). Sergeant Van Buren observed a white Chevy Impala drive westbound in the fast lane past the officers' stationary position (TR. 11).  The Chevy Impala appeared to be exceeding the speed limit of sixty miles per hour and was apparently occupied by a lone driver (TR. 11-12).  The officers moved from their stationary position and started to follow the Chevy Impala (TR. 11).  Deputy Bargstadt used the patrol vehicle's video GPS system and confirmed the Chevy Impala was traveling at a rate of speed of sixty-eight miles per hour (TR. 13).  As the officers were following the Chevy Impala, Sergeant Van Buren observed the Chevy Impala slow down and change lanes from left lane to the second lane (TR. 13). Sergeant Van Buren observed the Chevy Impala abruptly change lanes and cross the dividing line before signaling (TR. 13).  Under Nebraska traffic rules, a driver must signal an intention to change lanes by signaling at least 100 feet in advance of changing lanes (TR. 14).  The Chevy Impala had actually started the lane change before its turn signal was

activated (TR. 13).  As the Chevy Impala slowed to around sixty miles per hour, Deputy Bargstadt activated the emergency lights and pulled in behind the Chevy Impala (TR. 14). The Chevy Impala pulled over on the shoulder of the Harrison/126th Street exit and stopped (TR. 14).

Sergeant Van Buren got out of the patrol vehicle with Deputy Bargstadt's mike pack while Deputy Bargstadt remained in the patrol vehicle[1] (TR. 15).  Sergeant Van Buren walked to the Chevy Impala and talked with the lone occupant driver, Nguyen (TR. 16). Sergeant Van Buren asked for Nguyen's license and vehicle papers, and informed Nguyen that the Chevy Impala was traveling over sixty-five miles per hour (TR. 16).  Sergeant Van Buren asked Nguyen questions about Nguyen's itinerary (TR. 16).  Nguyen said he had traveled from California to visit a friend in the Minneapolis/St. Paul area and was driving back to California (TR. 16).  When asked Nguyen's friend's name, Nguyen hesitated and looked straight ahead before answering even though Nguyen answered Sergeant Van Buren's other questions without hesitation (TR. 17).  Sergeant Van Buren returned to the patrol vehicle with Nguyen's papers and Deputy Bargstadt ran an EPIC[2] check on Nguyen (TR. 18).  While the check was being run, Sergeant Van Buren returned to the Chevy Impala after noticing the Chevy Impala was rented at the Minneapolis/St. Paul area which seemed extremely unusual to Sergeant Van Buren for someone to fly somewhere and drive a vehicle back (TR. 18).  When asked why he flew to Minneapolis/St. Paul and was driving back to California, Nguyen said he wanted to sightsee on the way back (TR. 20).  Sergeant Van Buren found it odd that a person would want to sightsee through Nebraska and Wyoming along I-80 (TR. 21).  Sergeant Van Buren walked back to the patrol vehicle and was told by Deputy Bargstadt the checks on Nguyen and the vehicle came back negative (TR. 22).  Deputy Van Buren then took Nguyen's paperwork back to the Chevy Impala, returned the paperwork to Nguyen, and informed Nguyen that only a warning ticket was being issued (TR. 22).  Sergeant Van Buren then asked Nguyen:  "Before you leave, is it okay if I ask you some additional questions?" (TR. 22).  Nguyen agreed to answer some

---

[1] Deputy Bargstadt's patrol vehicle was equipped with a video camera with audio and captured the traffic stop from the time the emergency lights were engaged to the end of the traffic stop (Exhibit 1 and 1A).

[2] EPIC stands for El Paso Intelligence Center.

questions (TR. 22).  Sergeant Van Buren asked Nguyen asked if Nguyen had any luggage in the trunk (TR. 22-23).  Nguyen responded that he had a suitcase and several boxes in the trunk (TR. 23).  When Sergeant Van Buren asked Nguyen what was in the boxes, Nguyen replied that they were wrapped presents, that Nguyen had wrapped the presents, but that Nguyen did not know what was in the presents (TR. 23).  Nguyen stated the presents were from his friend in Minneapolis, and Nguyen thought the packages contained clothes (TR. 24).  Nguyen said the officers could search the car if they wanted (TR. 24).  Sergeant Van Buren asked Nguyen:  "You say we can search the car?" (TR. 24).  Nguyen asked what the officers wanted to search for (TR. 25).  Sergeant Van Buren told Nguyen the officers would look for weapons, contraband, large amounts of money, and the like (TR. 25).  Nguyen said they could search (TR. 25).  When Sergeant Van Buren told Nguyen that Nguyen could say no and he did not have to let the officers search, Nguyen said the officers could check the car (TR. 25).  Sergeant Van Buren made clear to Nguyen the officers wanted to search the entire vehicle and containers, and Nguyen stated he understood (TR. 25).  Sergeant Van Buren then asked Nguyen to step out of the car (TR. 26).  Sergeant Van Buren asked Nguyen for the car keys.  Nguyen handed the keys to Sergeant Van Buren, and Nguyen hit the trunk release button to open the trunk (TR. 26).  Sergeant Van Buren asked Nguyen to go and stand by Deputy Jones who had just arrived at the scene with his patrol vehicle (TR. 27).

Sergeant Van Buren looked into the trunk and saw a cardboard box which was taped shut, a black suitcase, and a shopping bag (TR. 27-28; Exhibit 2).  Deputy Bargstadt was beside Sergeant Van Buren, and Deputy Bargstadt stated he smelled the odor of raw marihuana (TR. 28; 76).  Inside of the shopping bag, Sergeant Van Buren found a large black plastic garbage bag and inside the black plastic bag was a white plastic bag (TR. 29; Exhibit 3).  Inside the white plastic bag, Sergeant Van Buren felt paper stacks which he believed to be currency (TR. 29).  Sergeant Van Buren then opened the white plastic bag and found stacks of U.S. Currency in heat and vacuum sealed clear plastic bags (TR. 30; Exhibit 4).  Sergeant Van Buren and Deputy Bargstadt turned around and signaled a Code 2 to Deputy Jones who was with Nguyen (TR. 30).  Code 2 is a signal to detain Nguyen (TR. 30-31).  Deputy Jones placed Nguyen in handcuffs (TR. 31).  Deputy Bargstadt then

deployed his drug detection canine, Voss, around the Chevy Impala and received a positive indication for drugs when Voss sat and stared at the driver's side door (TR. 69). The Chevy Impala was towed to the DCSO at 156th and Maple Streets in Omaha and Nguyen was taken to the same DCSO by Deputy Jones (TR. 33). There, Nguyen declined to make a statement (TR. 33).

Deputy Bargstadt had Voss perform a discretionary sniff at the DCSO (TR. 70). The currency seized was placed in a locker unknown to Deputy Bargstadt (TR. 71-72). Also placed in the locker room was circulated and uncirculated currency (TR. 72). Thereafter, Sergeant Bargstadt and Voss entered the locker room and Voss conducted his sniff (TR. 72). Voss indicated at the locker where the currency taken from Nguyen's Chevy Impala was hidden (TR. 73-74). The seized currency was taken to a bank near the DCSO and converted to a cashier's check (TR. 33). The amount involved was $597,955.00 (TR. 33).

The court has reviewed both DVDs of the stop (Exhibit 1 and Exhibit 1A).

## CONCLUSION OF LAW

Nguyen argues the traffic stop of the Chevy Impala, Sergeant Van Buren's questioning of Nguyen, Nguyen's detention, and search of the Chevy Impala were illegal.

"[A] police officer who personally observes a traffic violation has probable cause to stop the vehicle." *United States v. $404,905.00 in U.S. Currency*, 182 F.3d 643, 646 (8th Cir. 1999) **citing** *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977). In this case, Sergeant Van Buren estimated the Chevy Impala was exceeding the sixty miles per hour speed limit. Upon being followed, Deputy Bargstadt confirmed the speed of the vehicle by his in-car GPS system to be that of sixty-eight miles per hour. Furthermore, Sergeant Van Buren observed the Chevy Impala make a lane change without properly signaling the change. Both actions constituted probable cause for the officers to stop the Chevy Impala.

Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. *$404,905.00,* 182 F.3d at 647; **see also** *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Additionally, the police officer may inquire about the motorist's destination, purpose of the trip and whether

the police officer may search the vehicle. ***$404,905.00,*** 182 F.3d at 647; ***U.S. v. Allegree,*** 175 F.3d 648, 650 (8th Cir. 1999). The police officer may take further action as necessitated by the information volunteered by the motorist, observations of the contents of the vehicle, and perceptions made the police officer. ***$404,905.00,*** 182 F.3d at 647; ***Allegree,*** 175 F.3d at 650-51. Nguyen was briefly detained by Sergeant Van Buren to accomplish the above tasks. Nguyen's responses to question were suspicious, but Sergeant Van Buren did not further detain Nguyen after the warning ticket was issued. Sergeant Van Buren asked Nguyen if he would answer some further questions and Nguyen agreed. It was during this time that Sergeant Van Buren asked Nguyen for consent to search the Chevy Impala and the containers therein. The detention of Nguyen was wholly proper and did not violate any of Nguyen's constitutional rights.

None of Nguyen's questioning involved an in-custodial interrogation requiring the advisement of rights under ***Miranda v. Arizona***, 384 U.S. 436 (1966), as argued by Nguyen. The safeguards of ***Miranda*** do not come into play until a person's freedom of action is curtailed to a "degree associated with formal arrest." ***California v. Beheler***, 463 U.S. 1121, 1125 (1983). The mere fact that a person is the focus of a criminal investigation does not trigger the requirements of a ***Miranda*** advice by an interrogating officer. ***Minnesota v. Murphy***, 465 U.S. 420, 431 (1984). Furthermore, "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." ***Berkemer v. McCarty***, 468 U.S. 420, 442 (1984). **See also** ***Pennsylvania v. Bruder***, 488 U.S. 9, 11 n.2 (1988); ***United States v. Streifel***, 781 F.2d 953, 959 (1st Cir. 1986). The court has considered the relevant factors to be considered in determining whether or not Nguyen was in custody for the purposes of ***Miranda*** warnings as set forth by the Eighth Circuit in ***United States v. Griffin***, 922 F.2d 1343, 1348-52 (8th Cir. 1990), and finds Nguyen was not in custody until placed in handcuffs by Deputy Jones. Consequently, no ***Miranda*** warnings were required of the colloquy between Nguyen and Sergeant Van Buren at the Chevy Impala.

Nguyen consented to the search of the Chevy Impala and its contents. "A search may be constitutionally valid either where it is supported by a reasonable suspicion or by

valid consent." ***United States v. Morris***, 910 F. Supp. 1428, 1446 (N.D. Iowa 1995) (internal citations omitted). "A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." ***Id.*** (internal citations omitted). The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." ***Ohio v. Robinette,*** 519 U.S. 33, 40 (1996). In this case there is no evidence that Nguyen did not understand his situation or the requests by Sergeant Van Buren. Nguyen even volunteered that the officers could search his vehicle. Nguyen was told he did not have to consent to the search. Nguyen cooperated fully with the officers even to the extent of opening his trunk without being asked to do so. The court finds Nguyen voluntarily consented to the search of the Chevy Impala and its contents.

Following the positive indication by Voss, the drug detection canine, the manner of packaging, and the Nguyen's statements regarding the contents of the packages, the officers had probable cause to seize the currency found in the trunk of the Chevy Impala. Nguyen's motion to suppress should be denied in all respects.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLON that:**

Nguyen's motion to suppress (Filing No. 17) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 27th day of December, 2007.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge